United States v. Burris. That's case number 19-6122. Council, you may proceed. Good morning, your honors. My name is Laura Deskin, and I represent the appellant Tony Burris. I'd like to start out by addressing the Warren case that was cited by the government in a 28J letter recently. Warren and this case are different, and right now I'm not talking about the motion to reconsider part of Warren. I'm talking about their first step act analysis. In Warren, the court there did the analysis correctly. The district court there assumed, though without deciding, but it assumed that the defendant's argument was correct, that okay, you say that you're not properly considered a career offender, and I'm going to accept that without deciding and start from the proffered recalculated guidelines. And then it reasoned that even if his guidelines were what they were asking for, which then, which there was 120 to 150 months, that his 240-month sentence was still appropriate. And it gave sufficiently detailed reasons for that, more than the court in this case did, actually a lot more, because it rationalized that he had been originally charged with much more serious crimes than the one to which he pled. It explained that he got a, what it called an advantageous plea deal, would likely not have been offered had the government been aware he was not a career offender that subjected him to 360 to life guidelines. And so in other words, if the 120 to 150-month sentence, it never would have made the plea offer. It also noted the court need not ignore his prior crimes, even if he were not a career offender. But here it's quite different. The court did not assume that Mr. Burris's proper guidelines were correct and ignored it to make an alternate holding. It basically said that it did not matter what they were. This was an early First Act case. It was, I think it was in May of 2019 that this took place. The First Act was still being dealt with, with the district courts. They were trying to figure out what it meant. They were trying to figure out is that, do you look at the indictment quantity or the PSR quantity in determining the guidelines? But Judge Russell here didn't want to decide, didn't think he needed to decide because he said, it just doesn't matter. It's wholly discretionary. Sorry. Go ahead, Judge Moritz. I was just going to say, is that exactly what the court said? I read it slightly differently and it may be a distinction without a difference, but the court didn't say it doesn't matter. He said, thus guideline recalculations, whatever their result are simply one factor in the court's consideration. It seemed to me he was saying, all right, I understand they are a consideration, but they're one factor. They're not overwhelming. But he said, whatever the result, he didn't say it doesn't matter. Do you think that's something we should distinguish? Well, I took it that way, but I mean, it's correct. He said, whatever their result, though, I don't think from there that that means it's a little different than what we now know you are required to do, which is say, these are the recalculated guidelines. I'm considering that as the guidelines here. And now I'm going to tell you why I am in this case, nevertheless, sentencing him to 262 months. Of course, the government's point is that we didn't necessarily require that procedure in Warren either. There wasn't a, well, here's what the guidelines are. I'm now calculating them. And now I'm going to apply the new guidelines in my, you know, in my, sorry, here they in Warren, they assumed that they were correct. So he started the district court started from that guideline and making its whole determination. But here, that wasn't that wasn't just wasn't done at all. Well, counsel, the district court here, though, was aware that Mr. Burris was arguing that the guideline range would have been 188 to 235. And specifically says that in its order. So I'm trying to see how much daylight there really is between making an assumption in Warren, on the one hand, and then in our case, here, the district judge, acknowledging what the guideline range argument was, and then saying, whatever the guideline range is, I think the Senate should still be 262 months. I take your point about the to this case. But on this assumption, argument, I'm trying to see where there's really any material difference. Well, I think it, to me, it goes to how the analysis had to have been done, if he wasn't willing to decide or assume that either guidelines range was correct. So, so Judge Russell here started the analysis with not in fact acknowledging or knowing or deciding what in fact, the sentence would have been if he were considering it as if the Fair Sentencing Act had applied at the time the original crime was committed. But isn't that what Judge Matheson is saying is that there was an acknowledgement of what it would have been maybe not specifically, but no one disputed that the PSR came up with that new guideline range, and everyone acknowledged it, the issue really wasn't about what the range new range was. As far as I can see, well, I think the way I took it was that you had these, these two different guidelines ranges that were at issue. But what was not decided was well, what does it mean? What does it mean for the fair sentence to analyze it and say, this is what it would have been if the Fair Sentencing Act had applied? He didn't decide if it was indictment quantity or PSR quantity. Well, there was a big difference. Let me just read from Warren in the portion of the opinion that's relevant to this case. We said there just a couple of weeks ago, in the instant case, the district court did not decide whether the career offender classification applied. And here you're saying the court did not decide what the proper calculation should be, but instead said whatever it was, the sentence would stand. It seems like in both instances, the district judge didn't do what you're saying that the district judge should have done. I think that the difference is, again, I don't know if I'm being repetitive here or not, perhaps I am, but that the, in Warren, when they did, when he, the judge did the entire analysis, they were assuming that what the district court, I mean, what the defendant, what Profford was correct, saying, I'm going to assume that and this is why I still think we're going to go up to 262 months from there. But here, the judge couldn't have done the full analysis that's required because we didn't, he didn't acknowledge what an impact was. He says, okay, whatever the result, whatever the result is, I'm not changing it. But then he didn't really, it's the analysis that he then went through that shows he wasn't really considering that lower guidelines level or taking to account why now the 262 month sentence is not, is appropriate. And why isn't your argument, when it comes right down to it, what you're saying is that the district judge didn't give a sufficiently fulsome explanation as to why he thought that the sentence should remain at 262 months. Isn't that what you're really saying? I guess, yes, that's part of it. And that he gave short shrifts to the thought that this there was the correct guideline calculation was in fact this lower 188 to 235 month range, especially when Mr. Burris was sentenced in the mandatory pre-booker time. So he was given a mandatory guideline sentence that was bottom of the guidelines 262 months then. And there's, there's really very little analysis as to why that remains appropriate considering the revised guideline range. Well, what if the district judge here had said, I think 50 grams is the amount to use for the calculation, and then went through and showed all the work of calculating the fence level and the guidelines and everything else and came up with the 188 to 235. And then without doing anything else, just said, but I'm going to stick with 262. Would your argument be any different? I think if he had done what we'd talking about there is, did he abuse his discretion? That's more of a substantial reasonableness argument that we're not really supposed to be doing. No, no. I'm, I'm asking whether the, the, the, not, not, not what the ultimate sentence was, whether it was too high or too low, but whether there was an adequate explanation for why he wouldn't go with the lower guideline. Oh, right. I would still be making that argument, but I guess I know you'd still be making it, but is it any different than the argument you've been making from the very beginning? I don't think so. I don't because he, he couldn't have started that analysis from the correct guidelines portion. He, he, he was basically saying the guidelines, I'm not worried about what they are. If they're high, if they're low, anything, this is, this is the sentence that I think I'm not going to change it, but if he had known or acknowledged or been willing to accept that the correct guidelines were in fact, these much lower guideline levels, then it changes how he was making that analysis, how he could have considered the entire thing. So it's kind of, maybe it sounds like parsing straws, but I think it makes a difference. And that's why, you know, this case in Broadway, I mean, this court in Broadway talked about that there, they were, they were discussing, is it the indictment quantity or is it the PSR quantity? And that was one of the issues. And Broadway said the indictment quantity controls, again, had a career offender, which it seems that most of these cases are involving career offenders, probably because of the high, high guidelines that they result in. And so they said, basically you did it wrong. You have to start from the correct hypothetical guidelines range. And the court there didn't do that. So it went back, but you have to, the court acknowledged there that now, look, he can still, a district court can still address all kinds of disparities and problems or reasons why they don't want to go down in their analysis, but you have to start from the right point. And here, I just don't think there's enough evidence in the record that his analysis floated in that way. So we can move, let's see if there's anything else on that issue. I think we covered that. And then we have the motion to reconsider issue that is being pressed by the government, but I will, I'll reserve my time on that. Thank you. Thank you, counsel. Mr. Cragar. Thank you, your honor, and may it please the court, Stephen Cragar on behalf of the United States. The district court did not commit reversible error in this case when it denied Mr. Burris' motion for a sentence reduction under section 404 of the First Step Act. Most of this court, most of this court's discussion with counsel for Mr. Burris focused on warrant. And yes, Judge Russell in this case did not use the exact same language that the district court used in warrant. He didn't say assuming without deciding or assuming arguendo. What he did was set forth the two competing guidelines ranges. He then said, whatever the guideline, excuse me, whatever the result of the guidelines recalculation, it's not a controlling factor because I'm basing my decision on Mr. Burris' criminal conduct, specifically his lengthy criminal history before and contemporaneous with the instant conviction. Now, Judge Russell was the one, was the district court judge who had been presiding over this case in its entirety. He obviously knew what the PSR said because he had extensively referenced the PSR earlier. And PSR sets forth that this instant conviction was Mr. Burris' sixth drug conviction. He had at the time of the initial sentencing, 17 criminal history points. And then he additionally had four pending trafficking charges in the state court. This is what gave rise to the district court statement that it was a lengthy criminal history before and contemporaneous with the instant conviction. Well, counsel, why wasn't it, why wasn't the district court required given that we have this first step act motion and the argument that the guidelines would be different, why wasn't the district court required to conduct its own independent calculation of the guidelines range? And why wasn't it an error, may not be reversible error, we can get to that, but why wasn't it an error for the court to fail to do that? Well, a couple of reasons. First, could you, in your answer, could you include the fact that it seems like in Broadway, Brown, and this corner case in the seventh circuit, the courts have said that the district judge does need to do that. Yes, your honor. So to start with why Brown and Broadway are distinguishable, Brown and Broadway both dealt with district courts that concluded they lacked authority to reconsider the guidelines. So they based their decision, they relied upon what this court concluded either was or may have been an incorrect guideline. The district courts in those cases didn't reach the issue, and I believe the same is true with corner. They didn't set the issue to the side and rule independent of the guidelines. They specifically calculated the guidelines, and as Brown explained, by calculating and relying upon the guidelines, implicitly accepted their legal conclusion. Judge Russell, on the other hand, depending on how one reads his order, either looked at both guidelines and said the result essentially is the same, or alternatively, set aside the guidelines, at which point, unlike the district courts in Brown and Broadway and corner, didn't implicitly adopt an incorrect legal conclusion. Well, that's kind of my problem here is that we, you know, it's really hard to tell from the written order exactly how he viewed the guidelines, but we do have a clue in the fact that Judge Russell said it's just a factor, whatever their result, meaning I'm not even going to decide. I'm not going to decide it. I'm not going to, I'm not even going to assume it. I'm not going to assume what the PSR says is correct. I'm not even going to decide it, because whatever result, they're just one factor, and to me, that is distinct from what we've said the first step is, which is to decide what they are, whether that's an assumption or that's a you at least have to take that first step, and that's an important step, and here I'm not sure he did that, especially when he said it's just one factor. It kind of does, as you say, it kind of does depend on how you read it, and why wouldn't we just send it back to the district court, if assuming we agree there was error, why wouldn't we just send it back? Well, Judge Moritz, there are a couple things I'd like to come back there. First, if I can push back slightly on your reading of the district court's order, if the district court had simply said guidelines, recalculations, whatever the result, or simply one factor in the court's consideration, and stopped there, I think that your reading, at least the reading you posited, would probably be the more likely reading, but it then followed, the district court then followed up and said, and not a controlling one at that, indicating that it looked at both of the guidelines, and concluded, I'm going to reach the same result, and because I'm going to reach the same result, this factor is not controlling, because whether I put in the 188 to 235 guideline range, or the 262 to 327 guideline range, it's not going to control, because I'm going to end up denying the motion either way. Now, to reach the second, the other part of your question, or your actual question, as opposed to premise, yes, this court has said in round, in broad way, that the district court must calculate the guidelines, but that wasn't the question that was put before the court. The question put before the court was whether the district court had to, or whether the district court was prohibited from recalculating the guidelines, and outside of that one, one to two paragraphs in Brown, the rest of Brown is essentially, is largely inconsistent with that, because Brown spends the first half talking about, this is not, echoing essentially what Manny said, this is not a sentencing proceeding, this is not a re-sentencing proceeding, it's a sentence modification proceeding, and then when it was giving its analysis, whenever it was explaining its rationale for reversal, it explained that the district court, the district courts were not obligated to err again, that they were not required to ignore all decisional law. It didn't say this is a sentencing, therefore everything's wide open. This court had already resolved that question, which then leads back to Manny, and Manny says the district court may, but is not required to err again, and one of those 3553a factors is 3553a4, which is where the guidelines come in. And so what it seems to, what it appears that Mr. Burris's argument is, and the natural implication by, of saying you must consider the guidelines, and this is what, where Brown got that line from, was that you must apply Gaul, but this court, in an earlier decision in Manny, said that Gaul's two-step analysis doesn't apply. Gaul's entire thought, Gaul's entire two-step analysis, the review for sentencing discretion, which this court said doesn't apply in a 404 proceeding, is to first look, did the district court properly calculate the guidelines, was there an adequate, was there procedural error, and if not, was there substantive error? We know for a fact that this court has to review for a type of substantive error, at least to the extent, in a 404 proceeding, at least to the extent that it has to determine whether the district court abuses discretion in its ultimate conclusion. So the really, the only thing that would separate this from a de novo re-sentencing is, does the district court have to calculate the guidelines? Now, if the district court calculates the guidelines and relies upon the guidelines, then yes, under Brown and under any other case that discusses abusive discretion in any form, then the district court would have to accurately calculate this. So if Judge Russell's order is the way that you hypothesize, the way Mr. Burris hypothesizes, then all Judge Russell did was do what Manny said he could do, which is not consider a specific 35-3A factor. Could I just jump in and ask you, you said that the district court doesn't need to calculate the guidelines or rely upon the guidelines. So those are two separate things, and it seems to me that in making a decision whether or not to rely upon the guidelines, wouldn't the court need to know what the guideline range is? In other words, those are just two separate things. And in the sentencing context, whether it's the First Step Act context or a regular federal sentencing procedure, isn't the court supposed to do a guideline calculation? It's an advisory guideline. The court may choose to rely on it or not, but you still calculate the guideline before you make that decision. So why wouldn't that approach be required in this context? Well, again, this comes back to what Manny said about not needing to consider the 35-3A factors, that they're permissible but not required. Yeah, but you're taking a subsection in 35-53A that refers to the guidelines and sort of looping that back to the Manny statement, but isn't calculation of the guidelines something that precedes consideration of 35-53A? Well, the entire guideline scheme, and in some ways, this in and of itself is a circular loop. The Sentencing Commission took the 35-53A factors to form the guidelines in its exercise of discretion. District courts take that as a can perform their own 35-53A analysis. But statutorily, the basis for the district court's consideration of the guidelines is 35-53A-4, at least now that the mandatory guidelines are, now that I think it's 35-53B was declared unconstitutional in Booker. But to, I think, get to the heart of your question, even if, I would say even if this court were to proceed along the lines that this should be treated somewhat similar to a direct appeal from an original sentencing in terms of what maybe it should be calculated, even the case law with regard to that says that a miscalculation or failure to calculate can be harmless. Specifically, the Supreme Court in Lee-Martinez said that a sentencing error can be harmless if the record shows, quote, the district court thought the sentence it chose was appropriate, irrespective of the guidelines. And so, even under the most friendly reading of the district court's order to Mr. Burris, that's what the district court said, irrespective of the guidelines. Whatever the guidelines say, this is the appropriate sentence. This is the appropriate position. Now you're back to Ms. Deskin's argument that what the district judge did in this case was perfunctory compared to what the district judge did in the Warren case, and that he needed to say more than just say, well, whatever the calculations are, I think based on his criminal history, I'm going to stay with 262. And she's saying that's not enough. And I take it, you think it is, and would be enough for us to find harmless error. Would that be your argument? That is one of our arguments. So why is it enough? Why did he say enough? Well, your honor, all that is required in a 404, for a 404 order, is to give this court sufficient knowledge, a sufficient record to determine whether the court abused its discretion. The district court explained, one, that it had weighed the various arguments, that it had weighed those arguments. And it concluded that the lengthy criminal history, before and contemporaneously with the instant conviction, is what drove its decision to deny the motion for a sentence reduction. In reviewing that, this court has the entire record to consider as to whether or not that is a substantively reasonable sentence, or sorry, excuse me, whether or not it's an abuse of discretion in denying the motion, would have been an abuse of discretion in denying the motion. And ultimately... I'm sorry. I wanted to ask you about the Seventh Circuit case that that appellant cites, Blake. Isn't this pretty much similar to what happened there? And the court there basically said the court has to decide, has to at least calculate the guideline range in order to inform its discretion. Basically, it's an abuse of discretion not to have the information you need to exercise that discretion. And if we read the district court's order here as simply saying, yeah, it doesn't matter. I'm not going to calculate it because it doesn't matter what it is. Isn't that an abuse of discretion? Because the court's discretion was not informed by what the guideline calculation actually was or should be. Judge Matheson, I see I'm out of time. Can I respond? Oh, please do. I believe you said, Blake, I'm not recalling... I might have the name wrong. I'm sorry. It's a Seventh Circuit case, a recent Seventh Circuit case with very similar facts. Right. I think you're referring to Korner. Korner. And Korner, again, is a case where the district court, it's like, if I remember correctly, like Brown and like Broadway in terms of the district court reached the wrong conclusion. In Korner, the Seventh Circuit cited its decision in White, which I think is very in White, said and was somewhat echoed in Korner as essentially an aside and as if the district court had done this, the result would have been different. In White, the Seventh Circuit said, if a judge explains the disputed guidelines issue, which I think it's undisputed that the district court did here, and explained that it didn't matter in the exercise of its discretion, again, what the district court did here, then any arguable error is harmless. So, yes. And in fact, what White specifically said is we encourage district courts, when they're stuck with a thorny issue of guidelines calculation, to simply determine whether or not it has a practical effect on the outcome of the proceeding. And if it doesn't, then explain so on the record and reach your conclusion. And that, again, is what the district court did here. Because the Seventh Circuit, and I think it's a matter of mutual consent, I think you've answered my question. Thank you, counsel. Thank you, Mr. Crager. You're, you're, you're over time. So I think we'll, if you'd like to make a concluding sentence, that's fine. And then we'll move on. I would simply ask this court to affirm the district court. Thank you. Thank you, counsel. Ms. Deskin, you have rebuttal time. Okay, I'll address the harmlessness issue. I think that the, the idea that it wasn't harmless, because, simply because Judge Russell said, I don't care what these guidelines are, or I'm not going to decide. And this is a 262 month sentence is appropriate. We cannot say, if he had known, based on this record, and the way he put it, and also that he said, my analysis is wholly discretionary here. I think he was really treating it like he does not need to figure out or start from the, from the guidelines, as if... Let me just, let me just ask you, though, it does say it, he does say at the end of his order, that he says defendants PSR details, a lengthy criminal history before and contemporaneous with the instant conviction. So he does reference something in, in, in justifying the 262 months. I take it, don't think he said enough for any error to be harmless. But do you have a, what do you have a case example that would support your position on that point? Well, I guess the best one that I can have, I mentioned already is, is Broadway, where, because they didn't start from correct hypothetical guidelines range, you know, they say, well, he may have, the problem the court had there was that he had been convicted of 487 grams of crack cocaine. So there he's concerned, well, you know, that's a lot of cocaine in today's world, it would have been 10 to life. So I'm not going to engage in this type of analysis. We know that that's incorrect. But they said there, as I recall, that he, the judge may still consider that. But that's not the analysis that he made on the right, he didn't start from the right point, he can still go back and use those, the same thought process again. But starting from the correct guidelines, we don't know and can't say what that ultimate outcome will be until it's remanded. And we go back and see. So with Judge the recalculated guidelines range was what Mr. Burris offered, that then maybe he would suddenly, I mean, he chose a 262 month sentence that was the bottom of a mandatory guidelines range. And perhaps something within the correct guide or the recalculated guidelines range would also suffice to address his lengthy criminal history. Okay, further questions for Ms. Deskin? All right. Well, we appreciate the arguments this morning, the case will be submitted.